UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **IN RE: SOCIAL MEDIA ADOLESCENT ADDICTION/PERSONAL INJURY PRODUCTS LIABILITY LITIGATION**<br>This Document Relates to:<br>**Jennifer Towles and Jameson Towles, as parents and next of kin of Ariyah L. Towles, deceased** | SUPPORTING ALLEGATIONS REGARDING DISCORD INC., MICROSOFT CORPORATION, MOJANG AB |

## A. NATURE OF THESE SUPPLEMENTAL ALLEGATIONS

1. Plaintiffs Jennifer and Jameson Towles are the parents and next of kin of Ariyah L. Towles ("Ariyah"), who died on September 12, 2025, at age nineteen. They submit these allegations as additional sheets to the Master Short-Form Complaint ("SFC").

2. Plaintiffs incorporate the SFC and, as applicable, the allegations of Plaintiffs' Second Amended Master Complaint (Personal Injury), ECF No. 494 ("Master Complaint"), without repeating them here. These allegations supplement the SFC as to additional defendants Discord Inc. ("Discord"), Microsoft Corporation ("Microsoft"), and Mojang AB, doing business as Mojang Studios ("Mojang").

3. At all relevant times, Defendants designed, developed, tested, operated, controlled, marketed, promoted, distributed, and monetized their respective products and features. Plaintiffs' claims arise from those product-design, warning, marketing, age-assurance, parental-control, and safety choices—not merely from third-party content or the failure to remove particular content.

4. The conduct and omissions alleged against each Defendant were substantial factors in a progression of compulsive product use, concealed and harmful online relationships, worsening depression and anxiety, self-harm, social and academic decline, and ultimately Ariyah's death by suicide. Plaintiffs seek all relief available under the claims selected in the SFC, including wrongful-death and survival damages to the extent authorized by applicable law.

## B. THE PARTIES AND THEIR PRODUCTS

5. Discord is a Delaware corporation with its principal place of business in San Francisco, California. Discord owns, operates, designs, develops, controls, maintains, markets, promotes, supplies, and distributes the Discord application throughout the United States.

6. Discord is an online communications and social-media product launched in 2015. It permits account holders to join communities called servers and to communicate through public and private text, voice, and video channels, including by exchanging photographs and videos.

7. Microsoft is a Washington corporation with its principal place of business at One Microsoft Way, Redmond, Washington 98052. Microsoft develops, publishes, markets, distributes, and monetizes the Minecraft game series and platform.

8. Mojang is a Swedish company with its principal place of business in Stockholm, Sweden. Mojang developed and released Minecraft and continues to design, develop, publish, market, distribute, and maintain Minecraft.

9. Microsoft acquired Mojang and its Minecraft intellectual property in 2014. Since then, Microsoft and Mojang have each played direct roles in Minecraft's design, development, testing, production, labeling, marketing, promotion, distribution, sale, and updating. Mojang is a wholly owned Microsoft subsidiary, but Plaintiffs allege direct liability against each entity based on its own conduct.

**C. DISCORD'S DEFECTIVE AND UNREASONABLY DANGEROUS DESIGN**

10. Discord's terms have purported to prohibit use by children under thirteen, yet during the relevant period Discord did not employ reliable age or identity verification sufficient to keep underage users or adults posing as minors from the product.

11. Discord knew or should have known that minors used its product, that users could misrepresent their identities and ages, and that bad actors could exploit servers, friend requests, private messages, voice calls, video calls, and file-sharing features to gain private access to minors.

12. Discord's product permitted minor users to receive friend requests and private messages from persons connected through a shared server, allowed users to communicate under pseudonyms, and placed substantial moderation responsibility on the creators or operators of individual servers.

13. These features created foreseeable pathways by which an unknown user could locate a minor in a shared online community, cultivate trust, move the

interaction into private communications, exchange images, intensify demands, and continue the relationship across other applications without meaningful parental notice.

14. Discord represented that safety settings and image scanning could help keep users safe, but its design did not reasonably protect minors from manipulative contacts, sexualized exchanges, coercive communications, or migration to less observable channels. Its safety messaging created a false sense of protection while leaving material risks undisclosed.

15. Discord did not provide effective, default parental controls or timely parental notice adequate to permit parents to understand with whom their minor child communicated, when those communications occurred, or whether an unknown person was pressuring the child to exchange images or meet offline.

16. Reasonable alternative designs available during the relevant period included reliable age and identity assurance; default restrictions on adult-to-minor and stranger-to-minor contact; parental notice and consent; risk-responsive friction or interruption; effective detection of sexualized or coercive exchanges; meaningful screen-time tools; and prominent warnings to minors and parents.

17. Discord could have implemented these measures without eliminating the product's principal utility. Its failure to do so rendered Discord defective and unreasonably dangerous for foreseeable minor users, including Ariyah.

**D. MICROSOFT AND MOJANG'S DEFECTIVE MINECRAFT DESIGN**

18. Minecraft is marketed to and widely used by children. Microsoft and Mojang have promoted Minecraft as suitable, safe, creative, and educational for young users, including through Minecraft Education and child-oriented collaborations and merchandise.

19. Microsoft and Mojang designed Minecraft around repeated core, secondary, and long-term gameplay loops. Mining, crafting, building, collecting, completing achievements or advancements, earning experience, leveling up, and pursuing progressively more ambitious projects provide immediate and intermittent rewards that encourage repeated and prolonged play.

20. Minecraft's achievement and advancement systems reward continued engagement, including tasks that require extended play across multiple sessions. These systems are capable of fostering compulsive use in vulnerable minors.

21. During the relevant period, Microsoft and Mojang did not provide clear and adequate warnings at account setup or during play concerning the risk of compulsive use, behavioral dependency, sleep disruption, social isolation, anxiety, depression, withdrawal symptoms, and associated mental-health harms in minors.

22. Microsoft and Mojang also failed to provide reasonably effective in-product time limits, default break prompts, age assurance, and parental controls across Minecraft versions and modes. Restrictions could be avoided through inaccurate birth-

date information or were ineffective unless a parent first knew of the account and successfully linked it to a parent account.

23. Reasonable alternative designs included age-appropriate default time limits, escalating break prompts, reliable age assurance, usable parental dashboards, limits on contact by unknown users in multiplayer environments, safety-by-default communication settings, and prominent risk warnings to minors and parents.

24. Microsoft and Mojang could have adopted those measures while preserving Minecraft's creative and educational utility. Their failure to do so rendered Minecraft defective and unreasonably dangerous for foreseeable minor users.

25. Beginning in approximately 2019, when she was approximately thirteen years old, Ariyah used Minecraft. The precise edition, device, account information, modes, servers, and features she used are expected to be confirmed through account records and discovery.

26. Ariyah's Minecraft use was part of the pattern of prolonged online engagement that began in approximately 2019. Minecraft's gameplay loops, achievement systems, and lack of adequate age-appropriate limits or warnings encouraged repeated use and contributed to that pattern.

27. Microsoft and Mojang's Minecraft design and warning failures were a substantial factor in Ariyah's progression into compulsive product use and the resulting loss of sleep, social and academic decline, anxiety, depression, self-harm, and other injuries alleged below.

## E. PLAINTIFF-SPECIFIC ALLEGATIONS

28. Ariyah was born on June 8, 2006, and lived in Collegedale, Tennessee during the relevant period. Before the product use at issue, Plaintiffs did not observe the depression, anxiety, self-harm, or other serious mental-health problems that later developed.

29. Beginning in approximately 2019, when she was approximately thirteen years old, Ariyah used Minecraft and Discord. She used the computer to play and to communicate with online contacts at night, sometimes until two or three in the morning.

30. Ariyah formed several online relationships. Plaintiffs presently know one username, "Nix," but do not know the true identities or ages of the users. Some contacts represented themselves as young people; others lived or claimed to live in Canada, Texas, New Jersey, New York, and other locations.

31. The online relationships included role-playing tied to fictional and anime characters. Ariyah began dressing in role-play costumes and clothing intended to make her appear older. Upon information and belief, she exchanged photographs with the individuals she met on these platforms.

32. The users' communications and demands became controlling, dysfunctional, and emotionally harmful. Some users mailed inappropriate items to Ariyah's home. Users also discussed meeting Ariyah in person, invited her on trips,

and developed plans over time for meetings after she turned eighteen and could travel without parental permission.

33. Ariyah's online activity involved both Minecraft and Discord. Minecraft provided a gaming environment that encouraged repeated and prolonged engagement. Discord enabled regular server, private-message, and voice communications with online contacts.

34. The movement between Minecraft, Discord, and other forms of communication made Ariyah's online relationships more persistent and harder for Plaintiffs to observe. Discord permitted pseudonymous, private, and difficult-to-monitor communications.

35. As Ariyah's use and online relationships continued, she became withdrawn, fell behind in school, stopped extracurricular activities and hobbies she had previously enjoyed—including music, archery, carving, drawing, and painting—and experienced worsening anxiety and depression.

36. Around ninth grade, at approximately age fourteen or fifteen, Ariyah began cutting herself. Her family removed knives from the home, arranged home-health therapy, and later enrolled her in a private boarding academy. Her self-harm and mental-health problems nevertheless continued.

37. After she turned eighteen, Ariyah moved away from her parents' home. Her mental health and relationships remained unstable. She experienced depression, anxiety, insomnia, dissociative symptoms, self-harm, and substance-use problems.

38. In approximately August 2025, Ariyah disclosed aspects of the online relationships to her mother. That same month, she began counseling and was diagnosed with depression and anxiety.

39. In early September 2025, Ariyah appeared to be improving. She made plans for art activities, college, and her future. On September 12, 2025, she died by suicide at age nineteen.

40. The identities, ages, and complete communications of the online users remain unknown to Plaintiffs. Ariyah's phone and tablet were provided to law enforcement after her death, and Plaintiffs have yet to recover her computer. Discovery is expected to identify account data, communications, server membership, safety reports, and the relationship between the users and the product features alleged here.

41. Plaintiffs did not know and had no reasonable means to know the full extent of Defendants' product-design choices, internal safety knowledge, inadequate age and identity controls, ineffective parental protections, or the manner in which those features combined to foster prolonged use and concealed, harmful contacts.

42. Defendants' warnings and public-facing safety representations did not reasonably disclose those risks. Had adequate warnings, age assurance, parental controls, default contact restrictions, usage limits, and intervention features been provided, Plaintiffs would have used them and would have acted to prevent or interrupt Ariyah's harmful use and online relationships.

43. The harms alleged were a foreseeable result of the manner in which Defendants designed, marketed, and failed to warn about their products. Plaintiffs allege that each Defendant's conduct was a substantial factor in Ariyah's compulsive use, loss of sleep, concealed and harmful online relationships, depression, anxiety, self-harm, loss of educational and social functioning, and death.

44. Plaintiffs suffered the loss of their daughter and related economic and noneconomic damages. Ariyah experienced conscious physical, emotional, and psychological injury before her death. Plaintiffs seek the damages and relief available under the causes of action selected in the SFC and applicable wrongful-death and survival law.

**F. CLAIM-SPECIFIC SUPPORTING ALLEGATIONS**

45. The products reached Ariyah without substantial change in the conditions in which Defendants designed, distributed, and intended them to be used. The foreseeable risks to minors outweighed the products' utility as designed, particularly in light of the feasible safer alternatives alleged above.

46. Defendants knew or should have known that minors' developing brains, limited impulse control, sensitivity to reward, and limited ability to recognize manipulation made them especially vulnerable to compulsive engagement and harmful online contacts.

47. Defendants failed to provide warnings reasonably calculated to reach minor users and their parents concerning compulsive-use risks, sleep disruption,

depression, anxiety, self-harm, pseudonymous contacts, image-based coercion, cross-platform migration, and offline-meeting risks.

48. Defendants breached their duties by designing and distributing the products with the dangerous features alleged above; failing to conduct and act upon adequate safety testing; failing to implement feasible safeguards; failing to provide adequate warnings and parental tools; and marketing the products to minors as safe, creative, educational, or socially beneficial without disclosing material risks.

49. To the extent the SFC asserts concealment, misrepresentation, or consumer-protection claims against a Defendant, the material omissions and safety representations alleged above were likely to mislead reasonable minors and parents. Defendants controlled the material nonpublic information concerning their own research, testing, design decisions, safety reports, and available alternatives, and Plaintiffs reasonably lacked access to that information.

50. Plaintiffs plead causation in the alternative and as to concurrent causes. Each Defendant's product need not have been the sole cause of injury; each materially contributed to a continuous and mutually reinforcing course of use and concealed communication that culminated in the injuries alleged.

51. Plaintiffs reserve the right to amend these allegations as account records, law-enforcement materials, platform data, and discovery clarify product-use dates, user identities, communications, and Defendants' internal knowledge and conduct.

Dated: 9/11/2026

*Respectfully submitted,*

By: /s/ Andrea S. Hirsch
Andrea S. Hirsch, GA 666557
Brooke F. Cohen, TX 24007019
COHEN HIRSCH, LP
5256 Peachtree Road, Suite 195-E
Atlanta, GA 30341
Tel: (678) 268-4683
andrea@cohenhirsch.com
brooke@cohenhirsch.com